CALVIN S. CROWELL *vs.* CAPE COD SHIP CANAL COMPANY
& another.

Barnstable.   January 29, 1897. — March 9, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Cape Cod Ship Canal Co. — Fund for Payment of Claims — Statute — " Labor
performed in Construction of Canal " — Allowance of Claims.*

The provision of St. 1883, c. 259, § 19, requiring the Cape Cod Ship Canal Com-
pany to deposit a certain fund with the Treasurer of the Commonwealth as se-
curity for the payment, among other things, of " claims for labor performed or
furnished in the construction of said canal," does not include the official services
of the president and clerk of the corporation, or the services of the chief engi-
neer, or of the clerk in his office, or of the assistant engineer, in locating the
canal and in making computations or surveys afterwards.

A claim for land damages, which has not been seasonably prosecuted and is barred
by the special statute of limitations, cannot be allowed in a suit in equity to
apply, to claims which it was intended to secure, the deposit required by St. 1883,
c. 259, § 19, to be made by the Cape Cod Ship Canal Company with the Treas-
urer of the Commonwealth ; nor can a claim founded on services rendered to
earlier companies be allowed in such suit.

BILL IN EQUITY, against the Cape Cod Ship Canal Company
and the Treasurer of the Commonwealth, brought originally to
have a judgment for land damages obtained by the plaintiff
against the corporation paid out of a fund of $200,000 deposited
by the corporation with the aforesaid treasurer, as required by
St. 1883, c. 259.   After the former decision, reported 164 Mass.
235, remanding the case to the county court that an order of
notice might issue to all parties interested in the fund to present
their claims within a time limited, the case came on to be heard·
for the proof of such claims before *Holmes,* J., who reported it
for the consideration of the full court, in substance as follows.

The claims were of several classes, and the questions of law
with regard to them are stated below.

(1.) Land damages.   These claims, so far as they have passed
to award or judgment, were not disputed.

(2.) A claim which had not been prosecuted, and proceedings
to establish which in the regular way were barred, was presented
on behalf of one Andrew F. Perry.   The judge declined to try

this claim in this cause. The question whether it ought to be tried here was reported to the full court.

(3.) Claims of various employees.

(a.) William Seward, Jr. This is a claim for salary as president of the defendant corporation from June, 1884, to June, 1894, at five hundred dollars per annum. He was elected president by the directors at their first meeting after organization, on July 6, 1883.

On October 8, 1883, a contract for the building of the canal was made with one Frederick A. Lockwood, whereby he was to build the canal according to the specifications, and was to receive therefor the sum of $7,500,000, payable in monthly instalments at the rate of one million dollars per mile of completed canal, according to the length of the canal completed during the month. The third section of this contract was as follows: " 3. For the purpose of meeting its payments under this contract, the said company shall from time to time, as required, issue capital stock to the full amount authorized by its charter. Said stock shall be subscribed for by said contractor and the amounts due from the company under the contract shall be offset against the amounts due from said contractor on account of his subscription to said capital stock."

On October 19, 1883, the by-laws of the corporation were amended by striking out the provision that " the directors must be stockholders," and on the same day Lockwood made the following subscription to the capital stock of the corporation. " I hereby subscribe for fifty thousand (50,000) shares of the capital stock of the Cape Cod Ship Canal Company, agreeing to pay therefor the sum of one hundred dollars ($100) per share as per terms of contract. Frederick A. Lockwood."

The directors of the corporation at a regularly called meeting passed a vote cancelling and annulling all subscriptions previously made to the capital stock, and also passed the following vote: " Voted, That each share of the capital stock of this company be assessed fifty cents (50 c.), and that Frederick A. Lockwood, subscriber therefor, be directed to pay the same (being $25,000) to the treasurer, on or before the 25th day of October." Accordingly Lockwood paid the assessment of $25,000 and began the construction of the canal, expending large amounts of money thereon. No certificate of stock was ever issued to him.

On May 8, 1884, at a meeting of the stockholders of the corporation, at which the president, William Seward, the treasurer, Samuel Fessenden, and Frederick A. Lockwood were present, Lockwood presented his subscription above set forth to the president as his credentials as a stockholder. The president " decided and declared that no meeting of the stockholders of the Cape Cod Ship Canal Company can be held." Lockwood said, " The stockholders are present and insist on their rights without any waiver whatever," and moved that the meeting be adjourned to May 29, at noon, and, on the president declining to entertain the motion, put the motion himself, and declared it carried unanimously. After several adjournments at meetings where Lockwood was present and voted as the sole stockholder representing the whole fifty thousand shares, and at which Seward was not present, at an adjourned meeting held on July 10, 1884, at which Seward was not present and at which Lockwood was present as representing the whole fifty thousand shares, a new board of directors omitting Seward was elected by ballot; and on the same day, the directors chosen at that meeting met and elected a new president of the corporation; and from July 10, Seward performed no further actual service as president of the corporation and attended no meetings, although there were frequent meetings of stockholders and directors, and the directors elected as above set forth and at subsequent meetings acted as directors and the president chosen by them acted as such until the corporation ceased to act in December, 1890.

At a meeting of the directors held on November 3, 1883, a committee was appointed with full powers to fix the salaries of the officers of the company at such amounts as the committee and Lockwood should agree upon.

On January 26, 1884, the committee made the following report: " Samuel Fessenden, Esq., Treas. Cape Cod Ship Canal Co. Dear Sir: The committee appointed at the last meeting of the board of directors to fix the salaries of the officers of the company have attended to their duty and have agreed with F. A. Lockwood upon the following salaries for the current corporation year, beginning at the organization of the corporation in July, 1883, and ending on the second Thursday of May, 1884. President, $500; Treasurer, $500; Clerk, $500; Chief Engineer,

$3000; Counsel, $3000. Yours truly, George S. Hall, Chairman." " I assent to the above salaries. F. A. Lockwood."

An agreement with the company was made by Seward and other officers of the company, which was signed by each, and was as follows: " Resolved, that all officers, employees, and agents of this company be employed with the understanding between them and the company, that no pay is to be received for their services unless and until there shall come into the treasury of the company sufficient money to pay the amount which shall be voted by the board of directors for their compensation, and that all officers and agents of the company sign and assent to this resolution before entering upon their duties."

From and after December 8, 1888, there was no money in the treasury of the corporation, unless this fund of $200,000 deposited with the Treasurer of the Commonwealth be so considered.

No meetings of the corporation or of the directors were held and nothing was done by the corporation after December 5, 1890.

The judge reserved for the full court the questions whether Seward was president after the election of June, 1884; whether, if he was president, he was entitled to salary as such; and whether such salary is a claim for labor within the charter so as to be a charge upon the fund of $200,000.

(b.) Willard Howland, clerk. It appeared by undisputed testimony that Mr. Howland had served as clerk of the corporation until December 5, 1890, at a salary of $500 a year, and that $1000 of this salary remained unpaid. He signed the agreement above set forth. The questions of the effect of this agreement and whether his claim is a claim for labor within the charter, St. 1883, c. 259, § 19, were reserved for the full court. Subject to them his claim was allowed.

(d.) P. E. Nostrand. He had a claim for services as against earlier companies, and suggested that in some way this company was subject to their obligations. The judge excluded this claim, and reported the question.

(e.) George H. Titcomb. He was chief engineer of the company from June 10, 1883, until April 25, 1888. He has a judgment, dated October 16, 1896, against the corporation for $16,350.71 and costs, for his salary during the above time. The judge reserved for the full court the question whether services

as chief engineer are labor within the charter. If they are labor within the charter, but if mere occupation of the office sufficient to entitle him to his salary but not contributing to the construction of the canal is not labor within the statute, then, subject to the question of competency, the judge found that he did not do labor at all approaching in value the amount of the judgment, and his claim was to stand for hearing on the question what the labor actually done by him fairly was worth, or on such other form of question as shall seem proper to the court in order to determine the amount of his charge against the fund.

(f.) George W. Wright. He was assistant engineer and has a judgment dated December 2, 1895, for $1580.65. His case raises the same question as Titcomb's claim.

(g.) John Donovan. He was a clerk of Titcomb. The company denies that it had any contract with or obligation to him. A suit is pending in the Superior Court, but as it would be a useless expense to try the case unless, if he gets a judgment, he can come against this fund, in order to save expense and in view of the fact that the court will be called on to deal with the questions, the judge ruled *pro forma* that his services were not labor within the meaning of the charter, and that, if they were, so much of the salary as did not represent actual labor was not a charge upon the fund, dismissed his claim on those grounds, and reported the question to the full court.

Thomas L. Livermore files a petition as creditor, and it is not disputed that he is entitled to the residue of the fund, if any there is, after the satisfaction of all claims which are a lien upon the fund.

*G. Putnam*, for Livermore.

*S. K. Hamilton*, for Wright, submitted the case on a brief.

*W. M. Payson*, for Titcomb.

*G. P. Wardner*, for Donovan.

KNOWLTON, J.    The Cape Cod Ship Canal Company was incorporated by the St. of 1883, c. 259, and by § 19 of that chapter was required to deposit two hundred thousand dollars with the Treasurer of the Commonwealth as security for the faithful performance of the obligations imposed by the act, " and for the payment of all damages occasioned by the laying out, construc-

tion, and maintenance of said canal, or by taking any land or materials therefor, and also of all claims for labor performed or furnished in the construction of said·canal." This is a suit in equity to apply the deposit to the payment of claims which it was intended to secure, and the principal question in the case is what is meant by the words "claims for labor performed or furnished in the construction of said canal." We have been referred to a great many cases in different jurisdictions in which the words "labor" and "laborer," used in different connections in a great variety of statutes, have been considered and interpreted by the courts. We can derive little aid from these cases, for the words "labor" and "construction" are simple words in common use, and the difficulty in this case is to ascertain the intention of the Legislature in passing a statute which, in important features, is unlike any other of which we have knowledge.

In this same section there is a requirement that said "corporation shall, within four months from the passage of this act, pay to the Commonwealth and to the town of Sandwich all sums of money expended by them, or either of them, in the support and removal from the Commonwealth of any persons who were engaged in the construction of said canal in the year eighteen hundred and eighty." Here is a reference to the fact that a previous attempt to construct a canal across Cape Cod had failed, and had left persons who were engaged in the construction in necessitous circumstances, which called for the expenditure of money by the town of Sandwich and the Commonwealth in their support or removal. "The faithful performance of the obligations imposed by this act," which the deposit of money was to secure, does not include the payment of ordinary debts. Payment is secured for holders of only two classes of claims; first, those for land and materials taken for the canal; and, secondly, those for labor performed or furnished in the construction of it. It is evident that there are reasons which moved the Legislature to prefer these classes of claims. In regard to land and materials, the owners would be obliged to give up what was taken under the right of eminent domain, and the State could not justly authorize the taking without making perfect provision for their security. In regard to the men engaged in manual labor in the

construction of the canal, it was important that their pay should be secured to them, to protect the town and Commonwealth from the risk of having to support them as paupers, as well as for their own sake.   As some of these laborers would not contract directly with the corporation, it was important that the contractors who furnished labor should be paid, as in that way there would be a probability that, having the means to do it, they would pay the laborers.   The obvious purpose of the provision is to protect two classes of creditors having special need of protection.

The persons before us, whose claims depend on the decision of this question, are the president and clerk of the corporation, the chief engineer, the assistant engineer, and a clerk of the chief engineer.   All of them except the clerk of the chief engineer held official, or semi-official, positions in the corporation, and rendered services in promoting the enterprise, for which they were to be paid regular salaries.   If the clerk of the chief engineer has any legal claim against the corporation, it is for a salary; but whether he had any contract with the corporation is in dispute.   It is too plain for discussion that the official services of the president and clerk of the corporation are not labor performed in the construction of the canal within the meaning of the statute.   The chief engineer and the assistant engineer have obtained judgment in the Superior Court against the corporation for amounts founded on established salaries, and it is found in the hearing of this case that the services rendered were much less in value than the amounts of the salaries for which judgments were rendered.   Presumably an important part of the services rendered in the engineering department were in locating the canal before beginning the work of construction.   The above quoted section of the statute makes a distinction between locating and constructing in the provision that " said canal company may locate, but shall not begin to construct said canal," before making the deposit of two hundred thousand dollars.   A great many statutes have been enacted in this Commonwealth in reference to labor and laborers, and in most, if not all of them, the legislation has not had reference to persons engaged in the learned professions or in educational or scientific pursuits.   Looking to the different provisions of the statute before us, we are of opinion that the labor performed in the construction of the

canal, for which this security was given, was not intended to include the services of the chief engineer, or of the clerk in his office, or of the assistant engineer, in locating the canal and in making computations or surveys afterwards.

The claim of Andrew F. Perry for land damages, which was not seasonably prosecuted and was barred by the statute of limitations, cannot be allowed in this suit.

The claim of Nostrand, founded on services rendered to other companies, has not been pressed and cannot be allowed.

The result is that all the disputed claims are disallowed, and, after payment of the undisputed claims for land damages, the balance is to be paid to Thomas L. Livermore.

*So ordered.*